**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MIGDALIA M,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 4407 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(I), 423, 1381a, 1382c, nearly four years ago. (Administrative Record (R.) 234-45). She claimed that she became disabled as of March 25, 2013, due to carpal tunnel surgery on her left hand, left arm nerve and muscle damage, bilateral knee pain, right shoulder pain, hepatitis C, and depression. (R. 283). Over the ensuing three years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g), and the parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c) on August 28, 2018. [Dkt. #6]. The case was reassigned to me on January 10, 2019. [Dkt. # 21], and was fully briefed in April 2019. Plaintiff asks the court to reverse and remand the

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

Commissioner's decision, while the Commissioner seeks an order affirming the decision.

## I.

### A.

Plaintiff was born on August 30, 1964 (R. 234), and was 48 years old when she claims she became disabled. (R. 234). She has a ninth-grade education, and a sporadic work history, briefly holding jobs at the night desk of hotels, in manufacturing, and in inventory. (R. 302). Most of these were through a temp agency. (R. 38). The only job she's had that lasted more than a few months was in a pharmaceutical plant. (R. 302). While she alleges an array of impairments, she seems to claim the most of her trouble is due to her knees, and to a lesser extent, to carpal tunnel syndrome.

At about 420 pages, the medical record in this case is of average heft as these cases go and, as is usually the case as well, precious little of it has anything to do with whether the plaintiff is disabled or not. Indeed, the plaintiff, herself, indicates through citations to the record in her brief that not even 20 pages of the record matter to her claim that she is unable to work. [Dkt. # 16, at 3-4]. A summary of the relevant evidence follows.

Plaintiff began seeing Dr. Randon Johnson for right knee pain in December 2013. (R. 409). Plaintiff indicated she had had right knee surgery in 1998 and 2006. (R. 409). While there was mild swelling and mild crepitus in the knee, range of motion was normal, there was no tenderness, no sign of tear, and the knee was stable. (R. 409). X-rays revealed some medial compartment narrowing. (R. 410). The doctor administered a corticosteroid injection. (R. 410). That worked for about four months, but in April 2014, plaintiff returned and reported that her right knee pain was returning. (R. 412). Again, there was no tenderness, full range of motion, mild swelling and mild crepitus. (R. 412). Plaintiff also reported that her *left* knee was now locking, and while range of motion was

nearly normal, McMurray's test suggested a possible meniscus tear. (R. 412). X-rays of the left knee were normal (R. 412), but an MRI of the left knee did reveal a meniscus tear. (R. 414). Plaintiff opted for another injection over surgery on the right knee in June 2014, but did elect surgery to repair the meniscus on the left. (R. 414-15). Surgery was scheduled for June 26, 2014 (R. 415), but was apparently cancelled for some reason – there are no records – and plaintiff's brief indicates she changed her mind about it. [Dkt. # 16, at 3].

Everything appears to have been fine with plaintiff's knees until November 2015. [Dkt. #16, at 3]. At that time, a right knee exam revealed mild tenderness, mild swelling, and full range of motion. (R. 551). There was mild tenderness and swelling in the left knee with full range of motion as well. Both knees were stable. (R. 551). Surgery wasn't an option at that time because plaintiff was undergoing Hepatitis C treatment. (R. 553). Bilateral injections were administered. (R. 551). In January 2016, examination was much the same, although there was no longer any swelling, and plaintiff indicated that the injections had been successful. (R. 553). Plaintiff returned in March 2016 complaining of left knee pain and wanted to have arthroscopic surgery, which was scheduled for March 7th. (R. 554). By June 2016, surgical portals were well-healed, and she had full weight-bearing capacity, and used crutches to walk. (R. 554). There was mild swelling and tenderness, and a slight reduction of range of motion from 130 degrees to 115. (R. 554). As of December 2016, Dr. Johnson again reported that plaintiff had full weight-bearing on both knees, but chose to use a crutch to walk. (R. 753). By January of 2016, she had discarded the practice. (R. 553).

In January 2017, plaintiff was reporting moderate pain, but was not taking anything for the symptoms. (R. 723). A left knee x-ray in February 2017 showed that osteoarthritis and narrowing of the medial compartment had progressed in the previous three years. (R. 754). MRI showed grade

3

IV chondromalacia. (R. 734).

Then there is plaintiff's bilateral carpal tunnel syndrome. In January 2015, plaintiff reported numbness and tingling in her left arm. (R. 496). She had fallen in November 2014, (R. 496), and underwent left carpal tunnel surgery in July 2015. (R. 400). Follow-up in November revealed mild swelling, but normal range of motion without difficulty in elbow and fingers. (R. 550). Then it was right hand numbness. In September 2016, examination revealed plaintiff could move her fingers without difficulty, but there was a positive Tinel's sign and positive Durjkan's test suggesting carpal tunnel syndrome. (R. 555). She had right carpal tunnel release surgery in November 2016. (R. 753). At follow-up in December, she reported some mild pain and numbness. There was some mild swelling, but she could move her fingers without difficulty. (R. 753).

**B.**

After an administrative hearing – at which plaintiff, represented by counsel, and a vocational expert testified – the ALJ determined plaintiff was not disabled. The ALJ found that plaintiff had the following severe impairments: carpal tunnel syndrome and degenerative joint disease of both knees. (R. 17). The ALJ noted that the plaintiff also suffered from Hepatitis C and cervical spine disorder, but found these impairments were not severe. (R. 17). He said that the Hepatitis C was treated conservatively and studies showed that there was only a small disc herniation in plaintiff's neck at C6 and mild disc bulging at C4-5 and C6-7. (R. 17). The ALJ also found that plaintiff's depression was non-severe, causing no more than mild limitations in understanding, remembering and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (R. 18). The ALJ then found that plaintiff's impairments, either singly or in combination, did not meet or equal a listed impairment assumed to be disabling in the

4

Commissioner's listings. (R. 18-19).

The ALJ then stated that the plaintiff had the residual functional capacity to perform light work – "lifting/carrying 20 pounds occasionally and 10 pounds frequently, standing/walking about six of eight hours, sitting about six of eight hours" – with the following list of additional limitations: "occasional bilateral pushing/pulling with lower extremities; never climb ladders ropes or scaffolds; occasionally climb ramps and stairs, balance stoop crouch, crawl, and kneel; occasional overhead reaching with the left; occasional bilateral fingering, that is fine manipulation of items no0 smaller than the size of a paper clip; occasional bilateral handling of objects, that is gross manipulation; avoid concentrated exposure to frequent vibration." (R. 19). The ALJ then found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 21). Specifically, the ALJ noted that plaintiff improved following surgery and, thereafter, treatment was routine and conservative, and that she sat through her hearing and did not give any signs of discomfort, responding appropriately to questioning. (R. 21). Finally, the ALJ felt that the plaintiff's daily activities were inconsistent with her alleged limitations. (R. 21).

The ALJ summarized the medical evidence, discussing treatment of plaintiff's knee impairments and carpal tunnel syndrome. Treatments in both areas moved from conservative to surgical, with injections along the way. The ALJ noted that, in both cases, treatment resulted in improvement, (R. 20). The ALJ referred to a consultative examination in September 2015 with essentially benign results. (R. 20). There were only medical opinions on disability in the record, both from the state agency doctors who reviewed the record during the application process. The ALJ gave greater weight to the second – which found plaintiff capable of light work – than the first –

which found plaintiff capable of medium work – explaining that the second was "given greater weight as that of a non-examining expert source . . .[and] is consistent with the claimant's improvement with appropriate surgical treatment." (R. 21).

Next, the ALJ determined that plaintiff could not return to her past work based on the testimony of the vocational expert. (R. 22). Then, the ALJ – again relying on the testimony of the vocational expert – found that given her residual functional capacity, plaintiff could perform the following jobs that exist in significant numbers in the national economy: bakery worker-conveyor line (DOT #524.687-022), usher (DOT #344.677-014), and furniture rental consultant (DOT #295.357-018). (R. 27). The ALJ concluded that plaintiff was not disabled and thus not entitled to benefits under the Act. (R. 29-30).

**II.**

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has said it must be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion."). But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

**III.**

As one can tell from review of the record, there is not really any medical evidence indicating plaintiff is disabled. Certainly, from time to time, while recovering from surgery, she would have been unable to work. But it in order to get benefits a claimant must be "disabled" for a continuous period of not less than twelve months. *Walker v. Berryhill*, 900 F.3d 479, 483 (7th Cir. 2018). Plaintiff ignores this requirement and argues the ALJ's mentions of her improvement after surgery are irrelevant. [Dkt. #16, at 9]. Indeed, as already pointed out, plaintiff's impairments and their symptoms, even prior to successful surgical treatment, are regularly described by her treating doctors as mild. There were no issues with range of motion or weight bearing in her knees; no issues with range of motion in her arms or fingers. The theme of the doctor's notes regarding plaintiff's symptoms throughout the pertinent period seems to be that the symptoms are "mild"; indeed, that characterization and description are repeated over and over again. And, significantly, while there are indications in the record that she told her doctors she was hoping to obtain disability benefits, not one of her providers opined that she was disabled.[2]

So, while there is little quibble within the ALJ's finding that the plaintiff can perform a limited range of light work, the plaintiff nonetheless insists there are three insuperable problems with the ALJ's opinion: "(1) his flawed assessment of the paragraph B criteria at step 2 purportedly resulted in an RFC assessment that failed to accommodate any of Plaintiff's non-exertional limitations; (2) his determination that the objective evidence does not support the symptoms alleged by the Plaintiff is unsupported and premised upon improper inferences; and (3) his assessment of

---

[2] While their opinions of disability would not be conclusive, they are not without significance.

opinion evidence is inadequate and illogical. [Dkt. #16, at 5].[3] Of course, here, as always, vigorous assertions do not carry the day; proof if required. Phrased differently, saying so doesn't make it so. *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010). *Accord Gaston v. Ghosh,* 498 F.3d 629 (7th Cir 2019); *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018). Evidence, not partisan conclusions, must govern. *Biestek v. Berryhill*, –– U.S. ––, 139 S. Ct. 1148, 1162 (2019). *Cf. Miller v. Lehman*, 801 F.2d 492, 500 (D.C. Cir. 1986)(Edwards, J., concurring)("However, a party's position is not legally infirm because his opponent says so.").

**A.**

First the plaintiff claims the ALJ failed to identify the specific paragraph B criteria. [Dkt. # 16, at 7]. Yet, the ALJ did, in fact, mention all four functional areas: " understanding, remembering and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself." (R. 18). The plaintiff then faults the ALJ for relying on the opinions as to these functional areas from the state agency psychologists, who reviewed the record and determined she did not have a severe mental impairment. [Dkt. # 16, at 7-8]. Plaintiff, surprisingly, cites no case law regarding this point. The law is well-settled that "[t]he ALJ may properly rely upon the opinion of these medical experts." *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir.1990); *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004); SSR 96-6p1996 WL 374180, *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program

---

[3]Plaintiff also initially argues that the ALJ "failed to meet his burden of proof at Step 5 of the analysis", but her attorney failed to raise this issue at the hearing despite having had the opportunity to question the vocational expert. Accordingly, the argument is forfeited, *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009), as plaintiff concedes by abandoning it in her reply brief after the Commissioner argued waiver in her response.

physicians and psychologists may be entitled to greater weight than the opinions of examining sources."). And, as already noted, there is no contrary medical opinion in the record.

Plaintiff then complains that the ALJ violated the Seventh Circuit's warning against equating daily activities with an ability to sustain full-time work. [Dkt. # 16, at 8]. While the warning is valid, that is not what the ALJ did here. The ALJ never said Plaintiff's activities showed a capacity for work; he said they were inconsistent with more than mild mental functional limitations. (R. 18). What the court said in *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) applies here: "The ALJ did not equate [plaintiff's] ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms . . . ." *See also Egly v. Berryhill*, 746 F. App'x 550, 555 (7th Cir. 2018)("The record does not support this view, as the ALJ did not 'equat[e] activities of daily living with an ability to work.'"). In short, the record does not support the view that the ALJ equated activities of daily living with an ability to work.

As the ALJ stated, plaintiff socializes with her family, drives, cooks simple meals, does laundry, folds clothes, grocery shops, etc. (R. 18). The plaintiff herself reported that she had no issues with memory, concentration, completing tasks, understanding and following instructions, or getting along with others. (R. 299, 327). In short, there is no evidence that plaintiff has any limitations beyond, perhaps, the mild ones the ALJ found. And, plaintiff certainly doesn't direct the court to any, instead inviting the court to "play doctor" and find that her medication "would certainly exacerbate her concentration issues, as well as her ability to stay on task, or to maintain proper attendance in a full time competitive work environment." We decline the invitation. That would be not only inappropriate for ALJs, but for reviewing courts as well.

**B.**

Next the plaintiff critiques the ALJ's assessment of her allegations regarding the limiting effect of her symptoms. While the plaintiff contends the ALJ based his assessment primarily on evidence of medical improvement [Dkt. #16, at 9], the ALJ actually based his assessment on the objective medical evidence, plaintiff's demeanor at the hearing, and her daily activities. (R. 21). All three of these factors are valid reasons for not accepting a plaintiff's allegations uncritically. "[A]lthough an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). *See also Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016)(court has little freedom to review credibility determinations based on demeanor); *Carter v. Colvin*, 556 F. App'x 523, 527 (7th Cir. 2014)(demeanor at the hearing a legitimate reason for disbelieving testimony);*Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016)("But it is entirely permissible to examine . . . a claimant's daily activities, to assess whether 'testimony about the effects of his impairments was credible or exaggerated.'"); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)(daily activities may undermine allegations of limitations). Moreover, an ALJ's assessment of a claimant's allegations doesn't have to be perfect, *see Shideler v. Astrue,* 688 F.3d 306, 312 (7th Cir. 2012)("Despite these shortcomings, the ALJ adequately evaluated [plaintiff's] credibility, and we see no reason to reverse."). Indeed, in order for a decision to be overturned, it's up to the plaintiff to show they it was "patently wrong." *Cooley v. Berryhill*, 738 F. App'x 877, 882 (7th Cir. 2018); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). Plaintiff has fallen far short of that mark here. Indeed, acceptance of what underlies the Plaintiff's unsupportable

argument would effectively leave ALJs with no basis for credibility determinations in these cases and would turn the hearing into a protracted proceeding the outcome of which would inevitably be in the applicant's favor. That, of course, is not the purpose of a "hearing."

Of course, as already discussed, the medical evidence in this case not only supports the fact that plaintiff's conditions improved following treatment, but that upon repeated examinations their effects were essentially mild. And, contrary to plaintiff's assertion [Dkt. # 16, at 10], treatment was, indeed, routine and conservative following surgery as the ALJ clearly said. (R. 21). Plaintiff at least seems to concede that her left side carpal tunnel syndrome improved with treatment. [Dkt. #16, at 9]. But, for some reason, plaintiff states that "improvement is a bit of an overstatement" and points out that she began experiencing symptoms in her right arm in September 2016 and had right carpal tunnel release surgery in November 2016. [Dkt. #16, at 9-10]. But plaintiff ends her narrative there, and doesn't discuss any records thereafter that might show surgery was not successful. What cannot be ignored is the follow-up note from December 16th, (R. 753), indicating that Plaintiff was recovering as expected and was able to move her fingers normally.

Beyond that, the plaintiff speculates that the ALJ inferred that her pain in her knee was not so bad that she initially chose injections over surgery. [Dkt. #16, at 10]. There is absolutely no indication the ALJ did that, and his opinion goes on to say that she did opt for surgery later on. (R. 20). Misreading the record and misreading the ALJ's opinion are not the routes to securing a remand. *Malik v. Holder*, 313 Fed.Appx. 851, 853 (7th Cir. 2009); *U.S. v. Kozinski*, 16 F.3d 795, 811 (7th Cir. 1994); *Florida Breckenridge, Inc. v. Solvay Pharm., Inc.*, 174 F.3d 1227, 1233-34 (11th Cir. 1999).

Plaintiff also claims she required a crutch for ambulation for months [Dkt. # 16, at 10], but of course, following knee surgery, that would be expected. Moreover, after a couple of months, her

doctor indicated she was fully weight bearing; he gave no indication that she continued to require a cane or a crutch. Indeed, on one occasion plaintiff explained to her doctor that she chose to use it "for balance." More importantly, no doctor ever prescribed the ongoing use of a crutch or a cane once she had recovered from her procedure or even suggested she use one.

## C.

The plaintiff also takes issue with the ALJ's assessment of the medical opinions regarding her physical capacity. [Dkt. #16, at 12]. There were only two such medical opinions to consider in this case, both from the state agency reviewing doctors. The plaintiff doesn't understand how the ALJ decided to give great weight to one and not the other as they were both from, as the ALJ put it, "a non-examining expert source." It makes little difference as the opinion the ALJ discarded found plaintiff could do medium work – a *far greater* residual functional capacity than the ALJ arrived at. As such, any error here was harmless, because the result for the plaintiff would not have changed had the ALJ favored the other opinion. *Weaver v. Berryhill*, 746 F. App'x 574, 578 (7th Cir. 2018); *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

In addition, the plaintiff argues that the ALJ failed in his duty to develop a full and fair record. The plaintiff contends that the ALJ had to ask for a medical opinion from her treating physician, Dr. Johnson. [Dkt. # 16, at 12]. While an ALJ is under an obligation to develop a "full and fair record," *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir.2000), "this obligation is not limitless." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). This duty is enhanced when a claimant appears without counsel, *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), but plaintiff has been represented by counsel since well before her administrative hearing. (R. 230). Even when the claimant lacks representation, the Seventh Circuit generally upholds the reasoned judgment of the

13

Commissioner on how much evidence to gather. *Nelms*, 553 F.3d at 1098. Here, where the plaintiff has counsel at the hearing and thereafter, she is presumed to have made her best case for benefits. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). Her attorney never argued at the administrative level that the ALJ should contact Dr. Johnson. (R. 77-79, 361-63). It's too late to bring it up now. *See, e.g., Spies v. Colvin*, 641 F. App'x 628, 635 (7th Cir. 2016)("[Plaintiff] who was represented by present counsel, did not argue before the ALJ that an MRI should be ordered and did not highlight any potential soft-tissue damage that such a diagnostic might reveal."). In this instance, plaintiff's best case is not enough.

Moreover, there is no requirement that ALJs contact all treating physicians for disability opinions. *Cf. Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). An ALJ "*may* contact treating physicians for further information when the information already in the record is 'inadequate' to make a determination of disability . . . ." *Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir.2007)(emphasis supplied). Here, the record was not inadequate; the ALJ simply found it failed to support the plaintiff's claim that she was disabled. *See Simila v. Astrue*, 573 F.3d 503, 516–17 (7th Cir. 2009).

## CONCLUSION

For the foregoing reasons, the ALJ's decision is affirmed. The defendant's motion for summary judgment [Dkt. # 24] is granted and the plaintiff's motion for summary judgment [Dkt. # 15] is denied.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/28/19